# EXHIBIT "A"

Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com





SEP **2 3** 2020

CLERK OF THE SUPERIOR COURT
M. MESSMER
DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Case No: CV2020-055199

|  |  |
|---|---|
| Peter Strojnik, | **COMPLAINT** |
| Plaintiff, | 1. **Americans with Disabilities Act** |
| vs. | 2. **Negligence** |
| | 3. **Negligent Misrepresentation** |
| Phoenix North Bell M6, LLC and G6 Hospitality, LLC | 4. **Failure to Disclose** |
| | 5. **Fraud / Consumer Fraud** |
| Defendants. | 6. **Consumer Fraud - Brand Deceit** |
| | 7. **Civil Conspiracy** |
| | 8. **Aiding and Abetting** |

**JURY TRIAL REQUESTED**

### SYNOPSIS OF CLAIMS

1. Segregation of the disabled is the last vestige of collectively acceptable discrimination. Discrimination is highly prevalent in the lodging industry. The lodging industry is subject to specific accessibility disclosure requirements under 28 C.F.R. 36.302(e)(1)(ii), and specific architectural accessibility requirements pursuant to the ADA Accessibility Guidelines ("ADAAG").

2. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the use of purchased brand names such as "Holiday Inn" and "DoubleTree by Hilton" while at the same time concealing the true identity of the hotel owners and operators. The intent and purpose of this deceptive identification is to mislead the lodging public into believing that they are booking a hotel room at a

national brand name property when they are in fact booking a room with an unknown owner and an unknown operator.

3. Therefore, Plaintiff brings this action against Defendants alleging:

   a. Violations of 28 C.F.R. 36.302(e)(1)(ii) and ADAAG; and

   b. Negligence for failure to remediate readily achievable remediations; and

   c. Violations of common law and statutory consumer protection laws; and

   d. Brand deceit for deceptive self-identification; and

   e. Civil Conspiracy and Civil Aiding and Abetting related to deceptive self-identification.

## PARTIES

4. Plaintiff is a retired veteran and a disabled person as defined by the 2008 ADA Amendment Act, 28 C.F.R. 36.105 all as more fully developed below.

5. Defendant Phoenix North Bell M6 LLC owns, operates leases or leases to a lodging business located at 2330 West Bell Road, Phoenix, AZ 85023 ("Hotel" or "Phoenix North Bell").

6. Defendant G6 Hospitality, LLC owns, operates, leases or leases to or franchises its brand "Motel 6" to willing hoteliers ("Motel 6").

## JURISDICTION AND VENUE

7. Superior Court has jurisdiction over this case or controversy by virtue of A.R.S. § 12-123. Venue is proper pursuant to A.R.S. § 12-401.

8. This Court has continuing subject matter jurisdiction by virtue of, *inter alia*, Plaintiff's claim for equitable nominal damages.

9. The ADA violations documented below relate constitute barriers to Plaintiff equal enjoyment of defendant's Hotel by virtue of the limitations of major life activities described in Table 1 below, that is, walking, standing, sitting, bending, sleeping, working, performing manual tasks, reaching, grasping, lifting, climbing, kicking, pushing, opening doors, twisting the wrist, shoulder and elbows, and working in a manner understood by the application of common sense, e.g., in improperly

configured handrail relates to Plaintiff's walking and grasping while an improperly configured staircase relates to his walking and climbing impairments[1].

10. These barriers impair Plaintiff's full and equal access to the Hotel.

11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA compliant as such compliance relates to Plaintiff's disability. However, Plaintiff intends to return to the Hotels periodically to test them for ADA compliance. Plaintiff's current intent is to return to the Hotels to lodge there or to test their accessibility within a year's time.

12. Plaintiff intends to visit the Hotels at a specific time when they become fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant Hotel suffers an imminent injury from the Hotel's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

## PLAINTIFF'S DISABILITIES AS DEFINED BY THE 2008 ADA AMENDMENT ACT AND 28 C.F.R. 36.105

13. At all times relevant hereto, Plaintiff suffered from the following physical disabilities: prostate cancer, genitourinary impairment, renal cancer, severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, missing right knee ameliorated with a prosthesis, limitation on the use of both shoulders, elbows and wrists, pleurisy, hyper blood pressure.

14. Plaintiff's physical infirmities alleged above do both of the following:

   a. Affect neurological, musculoskeletal, respiratory, cardiovascular, reproductive and genitourinary body systems; and

   b. Limit, without regard to mitigated or unmitigated measures, active or inactive state, remissive or non-remissive condition, the following major life activities:

---

[1] These are merely examples of the application of common sense; the referenced violations were not necessarily encountered at Defendant's Hotel. The actual barriers are photographically documented elsewhere in this Complaint. Each photograph has a description of the violation in common everyday language which relates to one or more of the limited life activities described above.

3

walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working, carrying stuff and other major life activities.

15. Plaintiff has a history of impairments stated in the preceding paragraph.

16. Plaintiff is regarded as having a physical conditions that limit major life activities.

17. Because of Plaintiff's disabilities, he requires the use of lodging facilities that are accessible to him and have the standard accessibility features of the construction related accessibility standards including those required by 42 U.S.C. Sec. 12101 et seq., 28 C.F.R. Part 36, the relevant Standards for Accessibility Design, as such laws and regulations relate to walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, carrying stuff and working.



18. Plaintiff has been declared disabled and has been issued a government disability placard reproduced in the margin.

19. The following Table 1 indicates the relationship between Plaintiff's ADA disabilities and major life activities:

**RELATION BETWEEN PLAINTIFF'S ADA DISABILITY AND MAJOR LIFE ACTIVITIES**

| DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36 REFERENCE |
| | Impairment | History Of | Reg'ed As | | |
| Prostate Cancer And Genitourinary Impairment | x | x | x | Abnormal cell growth, genitourinary, bladder, reproductive functions. | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) |

4

| | | | | | (d)(1)(viii)<br>(d)(2)((iii)(F)<br>(e)(1)(2)<br>(f)(1) |
|---|---|---|---|---|---|
| Renal Cancer | x | x | x | Abnormal cell growth, midsection twisting, turning, general movement. | (c)(1)(ii)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(F)<br>(e)(1)(2)<br>(f)(1) |
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | x | x | x | Walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, climbing, carrying stuff and other major life activities | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)(iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Partially Missing Limb - Missing Right Knee | x | x | x | Walking, standing, sitting, bending, walking, sleeping, working, climbing stairs, kicking, jumping, running, twisting knee, carrying stuff, and other major life activities. | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists | x | x | x | Performing manual tasks, sleeping, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, carrying stuff and working. | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(e)(1)(2)<br>(f)(1) |
| Pleurisy | x | x | x | Performing manual tasks, sleeping, walking, reaching, lifting, writing, working, carrying stuff, | (c)(1)(i)<br>(d)(1)(iv)<br>(d))1)(v)<br>(d))1)(vi)<br>(d)(2)((iii)(D) |

| | | | | or physically functioning on any level. | (e)(1)(2) (f)(1) |
|---|---|---|---|---|---|
| **Table 1** | | | | | |

20. Plaintiff has been declared permanently disabled by the Arizona Department of Transportation and is, therefore "regarded as" being disabled. The disabled placard reproduced in the margin above entitles him to preferential parking, stopping and the use of passenger loading / drop of zone areas.

21. In their unmitigated, active state, Plaintiff's impairments require the use of a wheelchair as defined in 28 C.F.R. 36.104.

22. Plaintiff incorporates the entirety of 28 C.F.R. 36 and the Standards for Accesibility Design into this Complaint as if fully stated herein.

**PLAINTIFF'S ADA REQUIREMENTS FOR FULL AND EQUAL ENJOYMENT OF A HOTEL**

23. With respect to the disclosures required by 28 C.F.R. 36.302(e)(1)(ii) **and** with respect to the removal of actual, physical or architectural barriers to accessibility, Plaintiff alleges:

a. Plaintiff is ADA disabled as described above. The relationship between Plaintiff's impairments and major life activities is described in Table 1.

b. Plaintiff's impairments are substantially limiting as this term is defined in the 2008 ADA Amendment Act and interpreted in 28 C.F.R. 36.105.

c. Plaintiff alleges that the provisions of the 2008 ADA Amendment Act and 28 C.F.R. 35.105 relating to (1) ameliorative effects of mitigating measures (2) episodic impairments, (3) remissive impairments, (4) predictable assessments and (5) the interpretative definition of "substantially limiting" apply to Plaintiff.

d. Because of and based on Plaintiff's impairments described above, Plaintiff requires a place of lodging where he desires to book a room to both:

1. Identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff assess independently

whether Defendant's Hotel and guest rooms meet Plaintiff's accessibility needs; and

2. Remediate architectural accessibility barriers that relate to Plaintiff's impairments.

e. The identification of accessible features at the hotel through a hotel's reservation service is required because without such information, Plaintiff is unable to assess independently whether a hotel's condition meets Plaintiff's needs.

f. The remediation of architectural accessibility barriers as they relate to Plaintiff's impairments is required because any encounter with architecturally inaccessible elements causes Plaintiff discomfort and pain when using, negotiating, overcoming or otherwise encountering such barriers.

g. As a result, Plaintiff requires a hotel's booking services to disclose, and the hotel to remediate, all of the following accessibility requirements of the applicable Standards for Accessibility Design[2]:

(i) Operable parts [205[3], 309, 404,] such as doors, door opening and closing hardware, AC controls. An encounter with a non-compliant operable part causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(ii) Knee and toe clearances [306] at counters, bars etc. An encounter with a non-compliant knee and toe clearance causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

---

[2] These requirements are based on Plaintiff's disability as defined in the 2008 ADA Amendment Act and 28 C.F.R. 36.105 in their active, inactive, remissive, non-remissive, mitigated or unmitigated states.

[3] Bracketed numbers refer to Standards for Accessibility Design.

(iii)   Reach ranges [308] in sales stores and other elements. An encounter with a non-compliant reach range causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(iv)   Accessible routes [402]. An encounter with a non-compliant accessible route causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(v) Walking surfaces [403] on accessible routes. An encounter with a non-compliant walking surfaces causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(vi)   Parking spaces, passenger loading ones, stairways and handrails [501, 502, 503, 504, 505]. An encounter with a non-compliant parking facilities, stairways and handrails causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(vii)   Toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms [602, 603, 604, 606, 607, 608, 609, 610, 611 and 612]. An encounter with a non-compliant toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(viii)   Transient lodging guest rooms [806]. An encounter with a non-compliant transient lodging guest room causes Plaintiff to experience pain and discomfort

1    when using, negotiating, overcoming or otherwise encountering such a barrier

2    and deprive him of full and equal enjoyment of the hotel.

3    (ix)    Dining surfaces and work surfaces, benches, check out isles and sales and

4    service counters [902, 903, 904]. An encounter with a non-compliant dining

5    surfaces and work surfaces, benches, check out isles and sales and service

6    counters cause Plaintiff to experience pain and discomfort when using,

7    negotiating, overcoming or otherwise encountering such barriers and deprive

8    him of full and equal enjoyment of the hotel.

9    (x) Swimming pools and saunas [1009]. An encounter with non-compliant

10    swimming pools or saunas causes Plaintiff to experience pain and discomfort

11    when using, negotiating, overcoming or otherwise encountering such barriers

12    and deprive him of full and equal enjoyment of the hotel.

13  24. Plaintiff reviewed Defendant's booking website to determine whether it "identif[ies]

14    and describe[s] accessible features and guest rooms offered through its reservations

15    service in sufficient detail to assess independently whether [Defendant's Hotel or

16    guest room] meet [Plaintiff's] accessibility needs".

17  25. Plaintiff booked a room at the Hotel, paid for it, picked up the key, went into the room

18    that had been sold to him as an accessible room, noted that the room was utterly

19    inaccessible. Plaintiff left.

20  26. The reproduction of relevant booking websites in Table 2 below demonstrates a

21    failure to identify and describe accessible features and guest rooms offered through

22    its reservations service in sufficient detail to permit Plaintiff to assess independently

23    whether Defendant's Hotel or guest room meet Plaintiff's accessibility needs:

| FAILURES TO DISCLOSE IN BOOKING WEBSITE |
| --- |
| 1ST PARTY WEBSITE |
| https://www.motel6.com/en/motels.az.phoenix.9206.html?lid=Local_Milestone_9206&travelAgentNumber=TA001305&corporatePlusNumber=CP792N5W&utm_source=google%20my%20business&utm_medium=listing&utm_campaign=visit%20website |

9

| *Motel Accessibility* |
|---|
| <ul><li>Accessible guest rooms with mobility features have doorways that provide 32" of clear width</li><li>Accessible lobby registration desk</li><li>Accessible parking spaces for cars in self-parking facility</li><li>Accessible parking spaces for vans in self-parking facility</li><li>Accessible public entrance (into Lobby)</li><li>Accessible route from accessible public entrance to registration area</li><li>Guest room televisions have closed captioning or closed captioning decoders provided</li><li>Accessible route provided from accessible public entrance to accessible guestrooms</li><li>Motel has a TTYs for guest use</li><li>Motel has portable communications kits for the hearing impaired</li><li>Motel employees will read written materials to blind guests and provide verbal directions to locations in the Motel, upon request</li><li>Service animals are welcome</li></ul><br>The booking website does not identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail.  This prevents Plaintiff from independently assessing whether Defendant's Hotel or guest rooms meet Plaintiff's accessibility needs. |
| **Table 2** |

27. The information disclosed in Hotel's Booking Website include the following misrepresentations of fact:

    a.  That the hotel is accessible. This representation is false as evidenced in Table 3 below.

    b.  That the ostensibly accessible guestroom is actually accessible This representation is false as evidenced in Table 3 below.

    c.  That there is Accessible route from accessible public entrance to registration area. This representation is false as evidenced in Table 3 below.

28. Plaintiff alleges that he personally visited the Hotel and personally encountered the following photographically documented conditions at the Hotel. Below each photograph is a vernacular description of the barrier and  how the barrier affected Plaintiff's impairments described above so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement (i.e., that he personally suffered discrimination under the ADA on account of his disability).

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PERSONALLY ENCOUNTERED BARRIERS**
**THIS PROPERTY IS SEVERELY AND DANGEROUSLY INACCESSIBLE.**
**A LIMITED LIST OF BARRIERS FOLLOWS.**



**Identification**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Improperly configured landings top and bottom of ramp**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Accessible parking not dispersed among several entries.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Open risers throuhout**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Improperly configured handrails**



**Inaccessible latch to the pool.**



Non-fixed pool lift.

Unsecured rug in front of entry to room.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



**Room Identification.**

19
20
21
22
23
24
25
26
27
28



**Peephole too high.**



**Security Latch too high.**



**Deadbolt requires twisting of the wrist.**

22



**Inaccessible toilet.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**No hand held shower spray unit.**



**Exposed Plumbing.**
**Table 3**

29. Plaintiff is deterred from booking a room at the Hotel because the violations documented above are directly related to his disabilities by the application and use of common sense as suggested by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

30. Each of the above conditions constitute a violation of the ADA and deprived Plaintiff of full and equal access and enjoyment of the Hotel.

31. The removal of barriers is readily achievable.

32. Plaintiff's injury will be redressed by the removal of barriers as requested below.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A.  Relief described in 42 U.S.C. §2000a – 3; and

    B.  Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C.  Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D.  Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E.  Equitable nominal damages; and

    F.  For costs, expenses and attorney's fees; and

    G.  All remedies provided for in 28 C.F.R. 36.501(a) and (b); and

    H.  All other relief susceptible of proof based on the allegations.

## COUNT TWO
### Negligence and Negligence Per Se

33. Plaintiff realleges all allegations heretofore set forth.

34. Defendant Motel 6 has been subject to previous ADA action in the United States District Court for the District of Arizona in cause numbers 2:17-cv-02621, 2:17-cv-02969, 2:17-cv-03535, and 2:17-cv-04119.

35. Defendant owed Plaintiff a duty to remove ADA accessibility barriers so that Plaintiff, as a disabled individual would have full and equal access to the public accommodation.

36. The ADA is a civil rights legislative pronouncements while the enforceable implementing regulation are safety pronouncements. *See,* e.g. 28 C.F.R. 36 and 2010 Standards for Accessibility Design.

37. Every time that Plaintiff is required to negotiate a non-compliant element in Defendant's Hotel, Plaintiff suffers pain and physical discomfort that the regulation is designed to prevent.

38. Plaintiff personally experienced the violations of enforceable implementing regulations and personally experienced paid, discomfort and suffering as a result of Defendant's violations of implementing regulations.

39. Plaintiff suffered physical and emotional damages in an amount to be proven at trial but in no event less than $35,000.00.

40. The implementing regulations were designed for the specific purpose of preventing, in part, the types of injuries suffered by Plaintiff.

41. Defendant breached this duty.

42. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals enumerated in 42 U.S.C. 12101(a), causing Plaintiff injury.

43. By engaging in negligent conduct described herein, Defendant engaged in intentional, aggravated and outrageous conduct.

44. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

45. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts, and in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A.  For finding of negligence; and

    B.  For damages in the amount of no less than $35,000.00; and

    C.  For punitive damages in the amount of no less than $135,000.00; and

    D.  For such other and further relief as the Court may deem just and proper.

### COUNT THREE
### Negligent Misrepresentation

46. Plaintiff realleges all allegations heretofore set forth.

47. Defendant failed to exercise reasonable care or competence in obtaining or communicating the information regarding ADA compliance to Plaintiff through its booking website as alleged above.

48. Defendant hotel supplied false information to Plaintiff for guidance in Plaintiff's business transaction, to wit: the renting of a hotel room.

49. Defendant's false statement was made in the course of Defendant's business in which Defendant has a pecuniary interest, to wit: renting of rooms.

50. Plaintiff justifiably relied on Defendant's false representation.

51. Plaintiff has suffered pecuniary losses as a result of his reliance on Defendant's false information regarding ADA compliance, to wit: he spent time, effort and resources in an amount to be proven at trial, but in no event less than $35,000.00.

52. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

53. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts, but in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligent misrepresentation; and

    B. For damages in an amount requested; and

    C. For punitive damages in the amount requested; and

    D. For such other and further relief as the Court may deem just and proper.

<div align="center">

**COUNT FOUR**
Failure to Disclose

</div>

54. Plaintiff realleges all allegations heretofore set forth.

55. Defendant was under a duty to Plaintiff to exercise reasonable care to disclose matters required to be disclosed pursuant to 28 C.F.R. 36.302(e)(1)(ii) as more fully alleged above.

56. Defendant was under a duty to disclose matters to Plaintiff that Defendant knew were necessary to be disclosed to prevent Plaintiff to be misled by partial disclosures of ADA compliance as more fully alleged above.

57. The compliance with the ADA is a fact basic to the transaction.

58. Defendant failed to make the necessary disclosures.

59. As a direct consequence of Defendant's failure to disclose, Plaintiff visited the hotel, but is deterred from booking a room because of its non-compliance with the ADA.

60. Plaintiff has been damaged by Defendant's non-disclosure in an amount to be proven at trial, but in no event less than $135,000.00.

61. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

62. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts but in no event less than $135,000.00

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of that Defendant failed to disclose information; and

    B. For damages in the amount requested; and

    C. For punitive damages in the amount requested; and

    D. For such other and further relief as the Court may deem just and proper.

<div align="center">

**COUNT FIVE**
Fraud
Common Law and Consumer

</div>

63. Plaintiff realleges all allegations heretofore set forth.

64. Defendant made representation(s) as alleged in Table 2 above.

65. The representation(s) were material.

66. The representation(s) were false.

<div align="center">29</div>

67. Defendant knew that the representation(s) were false or was ignorant to the truth or falsity thereof.

68. Defendant intended that Plaintiff rely on the false representation(s).

69. Plaintiff reasonably relied on the misrepresentation(s).

70. Plaintiff has a right to rely on the misrepresentation(s).

71. Plaintiff was consequently and proximately damaged by Defendant's misrepresentation(s).

72. Defendant's misrepresentation(s) were made in connection with the sale or advertisement of merchandise with the intent that Plaintiff rely on it.

73. Hotel rooms are "merchandise" as this term is defined in A.R.S. §44-1521(5).

74. Plaintiff suffered an injury resulting from the false misrepresentation(s) and was damaged thereby in an amount of no less than $35,000.00.

75. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

76. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts but in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of that Defendant failed to disclose information; and

    B. For damages in the amount requested; and

    C. For punitive damages in the amount requested; and

    D. For such other and further relief as the Court may deem just and proper.

**COUNT SIX**
Consumer Fraud - Brand Deceit

77. Plaintiff realleges all allegations heretofore set forth.

78. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the purchase and use of nationally recognizable brand names

such as "Holiday Inn", "Hilton", "Motel 6", "Marriott" in order to hide the true ownership and operational management of the hotel or motel.

79. One way this deceptive self-identification is communicated to the guests and potential guests is through actual identification on the property itself. For example, Defendant Phoenix North Bell identifies itself as Motel 6 at the entrance to the Hotel:



80. Phoenix North Bell is not Motel 6. It is Phoenix North Bell. The misidentification is necessary because general public, including Plaintiff, identify Motel 6 with a higher degree of lodging standard and general integrity than Phoenix North Bell.

81. Another way Defendant misidentifies itself is thorough its booking website:

82. Yet other ways Phoenix North Bell misidentifies itself as a Motel 6 is with the key jacked sporting Motel 6 logo, the key itself with a Motel 6 logo and personnel uniforms with Motel 6 logos:

 

83. The intent and purpose of this deceptive self-identification is to mislead the lodging public into believing that they are booking a hotel room at a national brand name property when they are in fact booking a room with an unknown owner and an unknown operator. Plaintiff justifiably relied on Phoenix North Bell's false self-identification to his damage.

84. Plaintiff suffered an injury resulting from the false misrepresentation(s) and was damaged thereby in an amount of no less than $35,000.00.

85. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

86. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts but in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

   A. For finding of that Defendant failed to disclose information; and

   B. For damages in the amount requested; and

   C. For punitive damages in the amount requested; and

   D. For such other and further relief as the Court may deem just and proper.

**COUNT SEVEN**
Civil Conspiracy

87. Plaintiff realleges all allegations heretofore set forth.

88. Motel 6 is the owner of the "Motel 6" brand name.

89. Motel 6 and Phoenix North Bell knew, at all times relevant hereto, that the Motel 6 brand has positive reputation, while Phoenix North Bell has no reputation.

90. Public's perception of Phoenix North Bell is wholly derivative of the reputation of Motel 6.

91. Motel 6 and Phoenix North Bell also knew, at all relevant times, that Phoenix North Bell would sell more rooms if it sold the rooms under the name Motel 6 and not Phoenix North Bell.

92. Phoenix North Bell paid Motel 6 for the use of its brand name Motel 6.

93. Motel 6 and Phoenix North Bell structured their relationship so that Plaintiff and the public would believe that Motel 6 operates the Hotel, while at the same time they knew that Motel 6 was not the operator and would not be considered an operator of the Hotel and thereby not subject to ADA liability.

94. Motel 6 and Phoenix North Bell also knew that the use of Motel 6's brand name would mislead the traveling public into believing that they were dealing with a reputable

national lodging chain when in fact they are dealing with an unknown person or entity with no reputation.

95. It was for these reasons that Motel 6 and Phoenix North Bell agreed that the Hotel would market its rooms under the name of Motel 6.

96. The agreement between Defendants assured that Motel 6 would (1) receive compensation for its part of the brand deceit and (2) avoid ADA liability.  Phoenix North Bell would reap the benefits of greater sales caused by Defendants' brand deceit.

97. Defendants agreed to falsely market the Hotel as a "Motel 6" in order to misled the public, including Plaintiff,

98. Plaintiff believed he was dealing with Motel 6 when in fact he was dealing with an unknown entity.

99. Defendants Motel 6 and Phoenix North Bell agreed to accomplish an unlawful purpose, the sale of rooms under deceptive brand, and did so by unlawful means.

100.   Plaintiff suffered an injury resulting from Defendants' brand deceit and their agreement to accomplish it in a manner described above and was damaged thereby in an amount of no less than $35,000.00.

101.   Defendants either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

102.   Defendants are liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts but in no event less than $235,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of that Defendants committed a civil conspiracy; and

    B. For damage as prayed for above; and

    C. For damages in the amount requested; and

    D. For punitive damages in the amount requested; and

1    E. For such other and further relief as the Court may deem just and proper.

2    **COUNT EIGHT**
3    Civil Aiding and Abetting

4    103.   Plaintiff realleges all allegations heretofore made.

5    104.   Defendant Motel 6 aided and abetted Defendant Phoenix North Bell's
6         brand fraud by:

7         a. Providing the Motel 6 signage on the physical Hotel building; and

8         b. Maintaining a booking website that does not disclose the true ownership
9            and operator of the Hotel; and

10        c. Issuing reservation confirmations in the name of Motel 6 in order to
11           conceal the true ownership and operations; and

12        d.  Otherwise assuring that the true name of the owner of the Hotel appears
13           nowhere on its disclosures, websites, booking websites, telephonic
14           identification, physical signage or anywhere else.

15   105.   Plaintiff suffered an injury resulting from Motel 6's aiding and abetting
16        brand deceit in an amount of no less than $35,000.00.

17   106.   Defendants either intended to cause injury to Plaintiff or defendant
18        consciously pursued a course of conduct knowing that it created a substantial
19        risk of significant harm to Plaintiff.

20   107.   Defendants are liable to Plaintiff for punitive damages in an amount to be
21        proven at trial sufficient, however, to deter these Defendants and others
22        similarly situated from pursuing similar acts but in no event less than
23        $235,000.00.

24   108.   With respect to all counts, Plaintiff alleges that Defendant has been subject
25        to a previous ADA action but has not remediated wither its booking website or
26        the architectural conditions of its Hotel. Plaintiff further alleges that:

27        a. Defendants' conduct was and continues to be representable; and

28

35

b. Defendant's caused severe of the harm, i.e. segregation of persons with disabilities; and

c. Defendants segregated of Plaintiff from the rest of the traveling public; and

d. The duration of Defendants' the misconduct is over 30 years and

e. Defendants' were fully aware of their own illicit maintenance of hotels; and

f. Particularly where compensatory damages may be low, "the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages". *Sanchez v. Clayton*, 117 N.M. 761, 767, 877 P.2d 567, 573 (1994) (citing to 1 Dan B. Dobbs, *Law of Remedies* § 3.11(10), at 515-16 (2d ed. 1993))).

109. These factors recommend that only the most severe sanctions against Defendant Hotel will assure compliance with the ADA and integration of disabled individuals.

## REQUEST FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this 22nd day of September, 2020.

PETER STROJNIK

Peter Strojnik
Plaintiff

36

# EXHIBIT "B"

CLERK OF THE
SUPERIOR COURT
FILED
V. MARTINEZ, DEP

2020 SEP 29  PM 12: 29

Peter Strojnik
Pro Per
7847 N. Central Ave.
Phoenix, AZ 85020
(602) 524-6602

ORIGINAL

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

**PETER STROJNIK,**

Plaintiff,

Case Number: CV2020-055199

vs.

**DECLARATION OF SERVICE BY A**
**PRIVATE PROCESS SERVER**

**PHOENIX NORTH BELL M6, LLC, et al,**

Defendant.

Received by Rush Hour Legal Service to be served on **G6 HOSPITALITY, LLC**.

I, Russell D. Hoffman, do hereby affirm that on the **28th day of September, 2020** at **1:25 pm**, I:

served **G6 HOSPITALITY, LLC** by delivering a true copy of the **Summons; Certificate of Compulsory Arbitration; Complaint** with the date and hour of service endorsed thereon by me, to: **CORPORATION SERVICE COMPANY Brooklyn Vandeventer (Agent) (Statutory Agent)** at the address of: **8825 N. 23rd Ave. Suite 100, Phoenix, AZ 85021**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 24, Sex: F, Race/Skin Color: White, Height: 5'3", Weight: -, Hair: Blonde, Glasses: N

I, being fully qualified under ARCP 4(e) to serve process within the State of Arizona and having been so appointed by Maricopa County Superior Court, Declare under penalty of perjury that the foregoing is true and correct and was executed on the above date.

**Russell D. Hoffman**
Process Server MC-7486

**Rush Hour Legal Service**
P.O. Box 30997
**Mesa, AZ 85275**
**(480) 797-9483**

Our Job Serial Number: RUL-2020001841
Service Fee: $75.00

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1g





Peter Strojnik
Pro Per
7847 N. Central Ave.
Phoenix, AZ 85020
(602) 524-6602

ORIGINAL

CLERK OF THE
SUPERIOR COURT
FILED
M. MESSMER, DEP

2020 SEP 30  AM 8: 51

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

**PETER STROJNIK,**

　　　　　　　　　　Plaintiff,

vs.

**PHOENIX NORTH BELL M6, LLC, et al,**

　　　　　　　　　　Defendant.

Case Number: CV2020-055199

**DECLARATION OF SERVICE BY A
PRIVATE PROCESS SERVER**

Received by Rush Hour Legal Service to be served on **PHOENIX NORTH BELL M6, LLC**.

I, Christina Donaldson, do hereby affirm that on the **29th day of September, 2020 at 2:45 pm, I:**

served **PHOENIX NORTH BELL M6, LLC** by delivering a true copy of the **Summons; Certificate of Compulsory Arbitration; Complaint** with the date and hour of service endorsed thereon by me, to: **GERALD DE LA' O (General Manager Authorized by the Statutory Agent)** at the address of: **2330 W. Bell Rd., Phoenix, AZ 85023**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
I spoke to Gerald De La O the general manager and he called Sunesh Tewari (Stat agent). He authorized Gerald to accept service.

**Description** of Person Served: Age: 50s, Sex: M, Race/Skin Color: Hispanic, Height: 5'8", Weight: 170, Hair: Black, Glasses: N

I, being fully qualified under ARCP 4(e) to serve process within the State of Arizona and having been so appointed by Maricopa County Superior Court, Declare under penalty of perjury that the foregoing is true and correct and was executed on the above date.

　　　　　　　　　　　　　　　　　　　_Donald_

**Christina Donaldson**
MC 8800

**Rush Hour Legal Service**
P.O. Box 30997
**Mesa, AZ 85275**
**(480) 797-9483**

Our Job Serial Number: RUL-2020001842
Service Fee: $75.00

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1g



# EXHIBIT "C"

 ❯ Docket

# Civil Court Case Information – Case History

---

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2020-055199 | Judge: | Campagnolo, Theodore |
| File Date: | 9/23/2020 | Location: | Northeast |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Peter Strojnik | Plaintiff | Male | Pro Per |
| Phoenix North Bell M6 L L C | Defendant | | Pro Per |
| G6 Hospitality L L C | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 10/5/2020 | SUM - Summons | 10/7/2020 | Plaintiff(1) |
| 9/30/2020 | AFS - Affidavit Of Service | 10/5/2020 | |
| **NOTE:** PHOENIX NORTH BELL M6 L L C | | | |
| 9/29/2020 | AFS - Affidavit Of Service | 10/5/2020 | |
| **NOTE:** G6 HOSPITALITY L L C | | | |
| 9/23/2020 | COM - Complaint | 9/24/2020 | Plaintiff(1) |
| 9/23/2020 | CCN - Cert Arbitration - Not Subject | 9/24/2020 | Plaintiff(1) |
| 9/23/2020 | CSH - Coversheet | 9/24/2020 | Plaintiff(1) |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**

# EXHIBIT "1"

Peter Strojnik,
7847 N. Central Ave.
Phoenix, AZ 85020
Telephone: (602) 524-6602
ps@strojnik.com

COPY

SEP 2 3 2020

CLERK OF THE SUPERIOR COURT
M. MESSMER
DEPUTY CLERK

# MARICOPA COUNTY SUPERIOR COURT
# STATE OF ARIZONA

Case No. CV2020-055199

Peter Strojnik,

Plaintiff,

vs.

Phoenix North Bell M6, LLC and G6
Hospitality, LLC,

Defendants.

**CERTIFICATE OF
COMPULSORY
ARBITRATION**

I certify that the above cause is not subject to compulsory arbitration pursuant to Rules 72-77 of the Rules of Civil Procedure.

DATED this 22nd day of September, 2020.

**PETER STROJNIK**

Peter Strojnik
Plaintiff

# EXHIBIT "2"



Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

SEP 2 3 2020

CLERK OF THE SUPERIOR COURT
M. MESSMER
DEPUTY CLERK

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
**IN AND FOR THE COUNTY OF MARICOPA**

Case No:   CV2020-055199

**COMPLAINT**

1. **Americans with Disabilities Act**
2. **Negligence**
3. **Negligent Misrepresentation**
4. **Failure to Disclose**
5. **Fraud / Consumer Fraud**
6. **Consumer Fraud - Brand Deceit**
7. **Civil Conspiracy**
8. **Aiding and Abetting**

Peter Strojnik,

Plaintiff,

vs.

Phoenix North Bell M6, LLC and G6 Hospitality, LLC

Defendants.

**JURY TRIAL REQUESTED**

**SYNOPSIS OF CLAIMS**

1. Segregation of the disabled is the last vestige of collectively acceptable discrimination. Discrimination is highly prevalent in the lodging industry. The lodging industry is subject to specific accessibility disclosure requirements under 28 C.F.R. 36.302(e)(1)(ii), and specific architectural accessibility requirements pursuant to the ADA Accessibility Guidelines ("ADAAG").

2. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the use of purchased brand names such as "Holiday Inn" and "DoubleTree by Hilton" while at the same time concealing the true identity of the hotel owners and operators. The intent and purpose of this deceptive identification is to mislead the lodging public into believing that they are booking a hotel room at a

national brand name property when they are in fact booking a room with an unknown owner and an unknown operator.

3. Therefore, Plaintiff brings this action against Defendants alleging:

    a. Violations of 28 C.F.R. 36.302(e)(1)(ii) and ADAAG; and

    b. Negligence for failure to remediate readily achievable remediations; and

    c. Violations of common law and statutory consumer protection laws; and

    d. Brand deceit for deceptive self-identification; and

    e. Civil Conspiracy and Civil Aiding and Abetting related to deceptive self-identification.

## PARTIES

4. Plaintiff is a retired veteran and a disabled person as defined by the 2008 ADA Amendment Act, 28 C.F.R. 36.105 all as more fully developed below.

5. Defendant Phoenix North Bell M6 LLC owns, operates leases or leases to a lodging business located at 2330 West Bell Road, Phoenix, AZ 85023 ("Hotel" or "Phoenix North Bell").

6. Defendant G6 Hospitality, LLC owns, operates, leases or leases to or franchises its brand "Motel 6" to willing hoteliers ("Motel 6").

## JURISDICTION AND VENUE

7. Superior Court has jurisdiction over this case or controversy by virtue of A.R.S. § 12-123. Venue is proper pursuant to A.R.S. § 12-401.

8. This Court has continuing subject matter jurisdiction by virtue of, *inter alia*, Plaintiff's claim for equitable nominal damages.

9. The ADA violations documented below relate constitute barriers to Plaintiff equal enjoyment of defendant's Hotel by virtue of the limitations of major life activities described in Table 1 below, that is, walking, standing, sitting, bending, sleeping, working, performing manual tasks, reaching, grasping, lifting, climbing, kicking, pushing, opening doors, twisting the wrist, shoulder and elbows, and working in a manner understood by the application of common sense, e.g., in improperly

configured handrail relates to Plaintiff's walking and grasping while an improperly configured staircase relates to his walking and climbing impairments[1].

10. These barriers impair Plaintiff's full and equal access to the Hotel.

11. Plaintiff is deterred from visiting the Hotel based on Plaintiff's knowledge that the Hotel is not ADA compliant as such compliance relates to Plaintiff's disability. However, Plaintiff intends to return to the Hotels periodically to test them for ADA compliance. Plaintiff's current intent is to return to the Hotels to lodge there or to test their accessibility within a year's time.

12. Plaintiff intends to visit the Hotels at a specific time when they become fully compliant with ADAAG; just as a disabled individual who intends to return to a noncompliant Hotel suffers an imminent injury from the Hotel's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a hotel suffers the ongoing actual injury of lack of access to the Hotel.

**PLAINTIFF'S DISABILITIES AS DEFINED BY THE 2008 ADA AMENDMENT ACT AND 28 C.F.R. 36.105**

13. At all times relevant hereto, Plaintiff suffered from the following physical disabilities: prostate cancer, genitourinary impairment, renal cancer, severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, missing right knee ameliorated with a prosthesis, limitation on the use of both shoulders, elbows and wrists, pleurisy, hyper blood pressure.

14. Plaintiff's physical infirmities alleged above do both of the following:

   a. Affect neurological, musculoskeletal, respiratory, cardiovascular, reproductive and genitourinary body systems; and

   b. Limit, without regard to mitigated or unmitigated measures, active or inactive state, remissive or non-remissive condition, the following major life activities:

---

[1] These are merely examples of the application of common sense; the referenced violations were not necessarily encountered at Defendant's Hotel. The actual barriers are photographically documented elsewhere in this Complaint. Each photograph has a description of the violation in common everyday language which relates to one or more of the limited life activities described above.

3

walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working, carrying stuff and other major life activities.

15. Plaintiff has a history of impairments stated in the preceding paragraph.

16. Plaintiff is regarded as having a physical conditions that limit major life activities.

17. Because of Plaintiff's disabilities, he requires the use of lodging facilities that are accessible to him and have the standard accessibility features of the construction related accessibility standards including those required by 42 U.S.C. Sec. 12101 et seq., 28 C.F.R. Part 36, the relevant Standards for Accessibility Design, as such laws and regulations relate to walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, carrying stuff and working.



18. Plaintiff has been declared disabled and has been issued a government disability placard reproduced in the margin.

19. The following Table 1 indicates the relationship between Plaintiff's ADA disabilities and major life activities:

**RELATION BETWEEN PLAINTIFF'S ADA DISABILITY AND MAJOR LIFE ACTIVITIES**

| DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36 REFERENCE |
| | Impairment | History Of | Reg'ed As | | |
| Prostate Cancer And Genitourinary Impairment | x | x | x | Abnormal cell growth, genitourinary, bladder, reproductive functions. | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) |

| | | | | | (d)(1)(viii) |
| | | | | | (d)(2)((iii)(F) |
| | | | | | (e)(1)(2) |
| | | | | | (f)(1) |
| Renal Cancer | x | x | x | Abnormal cell growth, midsection twisting, turning, general movement. | (c)(1)(ii) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | x | x | x | Walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, climbing, carrying stuff and other major life activities | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)(iii)(D) (e)(1)(2) (f)(1) |
| Partially Missing Limb - Missing Right Knee | x | x | x | Walking, standing, sitting, bending, walking, sleeping, working, climbing stairs, kicking, jumping, running, twisting knee, carrying stuff, and other major life activities. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists | x | x | x | Performing manual tasks, sleeping, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, carrying stuff and working. | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (e)(1)(2) (f)(1) |
| Pleurisy | x | x | x | Performing manual tasks, sleeping, walking, reaching, lifting, writing, working, carrying stuff, | (c)(1)(i) (d)(1)(iv) (d))1)(v) (d))1)(vi) (d)(2)((iii)(D) |

| | | | | or physically functioning on any level. | (e)(1)(2) (f)(1) |
|---|---|---|---|---|---|
| **Table 1** | | | | | |

20. Plaintiff has been declared permanently disabled by the Arizona Department of Transportation and is, therefore "regarded as" being disabled. The disabled placard reproduced in the margin above entitles him to preferential parking, stopping and the use of passenger loading / drop of zone areas.

21. In their unmitigated, active state, Plaintiff's impairments require the use of a wheelchair as defined in 28 C.F.R. 36.104.

22. Plaintiff incorporates the entirety of 28 C.F.R. 36 and the Standards for Accesibility Design into this Complaint as if fully stated herein.

**PLAINTIFF'S ADA REQUIREMENTS FOR FULL AND EQUAL ENJOYMENT OF A HOTEL**

23. With respect to the disclosures required by 28 C.F.R. 36.302(e)(1)(ii) **and** with respect to the removal of actual, physical or architectural barriers to accessibility, Plaintiff alleges:

    a.  Plaintiff is ADA disabled as described above. The relationship between Plaintiff's impairments and major life activities is described in Table 1.

    b.  Plaintiff's impairments are substantially limiting as this term is defined in the 2008 ADA Amendment Act and interpreted in 28 C.F.R. 36.105.

    c.  Plaintiff alleges that the provisions of the 2008 ADA Amendment Act and 28 C.F.R. 35.105 relating to (1) ameliorative effects of mitigating measures (2) episodic impairments, (3) remissive impairments, (4) predictable assessments and (5) the interpretative definition of "substantially limiting" apply to Plaintiff.

    d.  Because of and based on Plaintiff's impairments described above, Plaintiff requires a place of lodging where he desires to book a room to both:

        1.  Identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff assess independently

whether Defendant's Hotel and guest rooms meet Plaintiff's accessibility needs; and

2. Remediate architectural accessibility barriers that relate to Plaintiff's impairments.

e. The identification of accessible features at the hotel through a hotel's reservation service is required because without such information, Plaintiff is unable to assess independently whether a hotel's condition meets Plaintiff's needs.

f. The remediation of architectural accessibility barriers as they relate to Plaintiff's impairments is required because any encounter with architecturally inaccessible elements causes Plaintiff discomfort and pain when using, negotiating, overcoming or otherwise encountering such barriers.

g. As a result, Plaintiff requires a hotel's booking services to disclose, and the hotel to remediate, all of the following accessibility requirements of the applicable Standards for Accessibility Design[2]:

(i) Operable parts [205[3], 309, 404,] such as doors, door opening and closing hardware, AC controls. An encounter with a non-compliant operable part causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(ii) Knee and toe clearances [306] at counters, bars etc. An encounter with a non-compliant knee and toe clearance causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

---

[2] These requirements are based on Plaintiff's disability as defined in the 2008 ADA Amendment Act and 28 C.F.R. 36.105 in their active, inactive, remissive, non-remissive, mitigated or unmitigated states.

[3] Bracketed numbers refer to Standards for Accessibility Design.

7

(iii)    Reach ranges [308] in sales stores and other elements. An encounter with a non-compliant reach range causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(iv)    Accessible routes [402]. An encounter with a non-compliant accessible route causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(v) Walking surfaces [403] on accessible routes. An encounter with a non-compliant walking surfaces causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(vi)    Parking spaces, passenger loading ones, stairways and handrails [501, 502, 503, 504, 505]. An encounter with a non-compliant parking facilities, stairways and handrails causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(vii)    Toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms [602, 603, 604, 606, 607, 608, 609, 610, 611 and 612]. An encounter with a non-compliant toilet and bathing rooms, water closets and toilet compartments, lavatories and sinks, bathtubs, shower compartments, grab bars, seats, washing machines, clothes dryers and saunas and steam rooms cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(viii)    Transient lodging guest rooms [806]. An encounter with a non-compliant transient lodging guest room causes Plaintiff to experience pain and discomfort

when using, negotiating, overcoming or otherwise encountering such a barrier and deprive him of full and equal enjoyment of the hotel.

(ix)   Dining surfaces and work surfaces, benches, check out isles and sales and service counters [902, 903, 904]. An encounter with a non-compliant dining surfaces and work surfaces, benches, check out isles and sales and service counters cause Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

(x) Swimming pools and saunas [1009]. An encounter with non-compliant swimming pools or saunas causes Plaintiff to experience pain and discomfort when using, negotiating, overcoming or otherwise encountering such barriers and deprive him of full and equal enjoyment of the hotel.

24. Plaintiff reviewed Defendant's booking website to determine whether it "identif[ies] and describe[s] accessible features and guest rooms offered through its reservations service in sufficient detail to assess independently whether [Defendant's Hotel or guest room] meet [Plaintiff's] accessibility needs".

25. Plaintiff booked a room at the Hotel, paid for it, picked up the key, went into the room that had been sold to him as an accessible room, noted that the room was utterly inaccessible. Plaintiff left.

26. The reproduction of relevant booking websites in Table 2 below demonstrates a failure to identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail to permit Plaintiff to assess independently whether Defendant's Hotel or guest room meet Plaintiff's accessibility needs:

| FAILURES TO DISCLOSE IN BOOKING WEBSITE |
| --- |
| 1ST PARTY WEBSITE |
| https://www.motel6.com/en/motels.az.phoenix.9206.html?lid=Local_Milestone_9206&travelAgentNumber=TA001305&corporatePlusNumber=CP792N5W&utm_source=google%20my%20business&utm_medium=listing&utm_campaign=visit%20website |

| *Motel Accessibility* |
|---|
| <ul><li>Accessible guest rooms with mobility features have doorways that provide 32" of clear width</li><li>Accessible lobby registration desk</li><li>Accessible parking spaces for cars in self-parking facility</li><li>Accessible parking spaces for vans in self-parking facility</li><li>Accessible public entrance (into Lobby)</li><li>Accessible route from accessible public entrance to registration area</li><li>Guest room televisions have closed captioning or closed captioning decoders provided</li><li>Accessible route provided from accessible public entrance to accessible guestrooms</li><li>Motel has a TTYs for guest use</li><li>Motel has portable communications kits for the hearing impaired</li><li>Motel employees will read written materials to blind guests and provide verbal directions to locations in the Motel, upon request</li><li>Service animals are welcome</li></ul> |
| The booking website does not identify and describe accessible features and guest rooms offered through its reservations service in sufficient detail.  This prevents Plaintiff from independently assessing whether Defendant's Hotel or guest rooms meet Plaintiff's accessibility needs. |
| **Table 2** |

27. The information disclosed in Hotel's Booking Website include the following misrepresentations of fact:

   a. That the hotel is accessible. This representation is false as evidenced in Table 3 below.

   b. That the ostensibly accessible guestroom is actually accessible This representation is false as evidenced in Table 3 below.

   c. That there is Accessible route from accessible public entrance to registration area. This representation is false as evidenced in Table 3 below.

28. Plaintiff alleges that he personally visited the Hotel and personally encountered the following photographically documented conditions at the Hotel. Below each photograph is a vernacular description of the barrier and  how the barrier affected Plaintiff's impairments described above so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement (i.e., that he personally suffered discrimination under the ADA on account of his disability).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PERSONALLY ENCOUNTERED BARRIERS**
**THIS PROPERTY IS SEVERELY AND DANGEROUSLY INACCESSIBLE.**
**A LIMITED LIST OF BARRIERS FOLLOWS.**



**Identification**

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



**Improperly configured landings top and bottom of ramp**

19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Accessible parking not dispersed among several entries.**



**Open risers throuhout**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Improperly configured handrails**



**Inaccessible latch to the pool.**



Non-fixed pool lift.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Unsecured rug in front of entry to room.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



**Room Identification.**

19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Peephole too high.**



**Security Latch too high.**



**Deadbolt requires twisting of the wrist.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Inaccessible toilet.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**No hand held shower spray unit.**



**Exposed Plumbing.**
**Table 3**

29. Plaintiff is deterred from booking a room at the Hotel because the violations documented above are directly related to his disabilities by the application and use of common sense as suggested by the United States Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

30. Each of the above conditions constitute a violation of the ADA and deprived Plaintiff of full and equal access and enjoyment of the Hotel.

31. The removal of barriers is readily achievable.

32. Plaintiff's injury will be redressed by the removal of barriers as requested below.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A.  Relief described in 42 U.S.C. §2000a – 3; and

    B.  Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C.  Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

    D.  Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

    E.  Equitable nominal damages; and

    F.  For costs, expenses and attorney's fees; and

    G.  All remedies provided for in 28 C.F.R. 36.501(a) and (b); and

    H.  All other relief susceptible of proof based on the allegations.

<div align="center">

**COUNT TWO**
Negligence and Negligence Per Se

</div>

33. Plaintiff realleges all allegations heretofore set forth.

34. Defendant Motel 6 has been subject to previous ADA action in the United States District Court for the District of Arizona in cause numbers 2:17-cv-02621, 2:17-cv-02969, 2:17-cv-03535, and 2:17-cv-04119.

35. Defendant owed Plaintiff a duty to remove ADA accessibility barriers so that Plaintiff, as a disabled individual would have full and equal access to the public accommodation.

36. The ADA is a civil rights legislative pronouncements while the enforceable implementing regulation are safety pronouncements. *See,* e.g. 28 C.F.R. 36 and 2010 Standards for Accessibility Design.

37. Every time that Plaintiff is required to negotiate a non-compliant element in Defendant's Hotel, Plaintiff suffers pain and physical discomfort that the regulation is designed to prevent.

38. Plaintiff personally experienced the violations of enforceable implementing regulations and personally experienced paid, discomfort and suffering as a result of Defendant's violations of implementing regulations.

39. Plaintiff suffered physical and emotional damages in an amount to be proven at trial but in no event less than $35,000.00.

40. The implementing regulations were designed for the specific purpose of preventing, in part, the types of injuries suffered by Plaintiff.

41. Defendant breached this duty.

42. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals enumerated in 42 U.S.C. 12101(a), causing Plaintiff injury.

43. By engaging in negligent conduct described herein, Defendant engaged in intentional, aggravated and outrageous conduct.

44. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

45. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts, and in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence; and

    B. For damages in the amount of no less than $35,000.00; and

    C. For punitive damages in the amount of no less than $135,000.00; and

    D. For such other and further relief as the Court may deem just and proper.

## COUNT THREE
### Negligent Misrepresentation

46. Plaintiff realleges all allegations heretofore set forth.

47. Defendant failed to exercise reasonable care or competence in obtaining or communicating the information regarding ADA compliance to Plaintiff through its booking website as alleged above.

27

48. Defendant hotel supplied false information to Plaintiff for guidance in Plaintiff's business transaction, to wit: the renting of a hotel room.

49. Defendant's false statement was made in the course of Defendant's business in which Defendant has a pecuniary interest, to wit: renting of rooms.

50. Plaintiff justifiably relied on Defendant's false representation.

51. Plaintiff has suffered pecuniary losses as a result of his reliance on Defendant's false information regarding ADA compliance, to wit: he spent time, effort and resources in an amount to be proven at trial, but in no event less than $35,000.00.

52. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

53. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts, but in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligent misrepresentation; and

    B. For damages in an amount requested; and

    C. For punitive damages in the amount requested; and

    D. For such other and further relief as the Court may deem just and proper.

<div align="center">

**COUNT FOUR**
Failure to Disclose

</div>

54. Plaintiff realleges all allegations heretofore set forth.

55. Defendant was under a duty to Plaintiff to exercise reasonable care to disclose matters required to be disclosed pursuant to 28 C.F.R. 36.302(e)(1)(ii) as more fully alleged above.

56. Defendant was under a duty to disclose matters to Plaintiff that Defendant knew were necessary to be disclosed to prevent Plaintiff to be misled by partial disclosures of ADA compliance as more fully alleged above.

57. The compliance with the ADA is a fact basic to the transaction.

58. Defendant failed to make the necessary disclosures.

59. As a direct consequence of Defendant's failure to disclose, Plaintiff visited the hotel, but is deterred from booking a room because of its non-compliance with the ADA.

60. Plaintiff has been damaged by Defendant's non-disclosure in an amount to be proven at trial, but in no event less than $135,000.00.

61. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

62. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts but in no event less than $135,000.00

**WHEREFORE,** Plaintiff prays for relief as follows:

A. For finding of that Defendant failed to disclose information; and

B. For damages in the amount requested; and

C. For punitive damages in the amount requested; and

D. For such other and further relief as the Court may deem just and proper.

### COUNT FIVE
Fraud
Common Law and Consumer

63. Plaintiff realleges all allegations heretofore set forth.

64. Defendant made representation(s) as alleged in Table 2 above.

65. The representation(s) were material.

66. The representation(s) were false.

29

67. Defendant knew that the representation(s) were false or was ignorant to the truth or falsity thereof.

68. Defendant intended that Plaintiff rely on the false representation(s).

69. Plaintiff reasonably relied on the misrepresentation(s).

70. Plaintiff has a right to rely on the misrepresentation(s).

71. Plaintiff was consequently and proximately damaged by Defendant's misrepresentation(s).

72. Defendant's misrepresentation(s) were made in connection with the sale or advertisement of merchandise with the intent that Plaintiff rely on it.

73. Hotel rooms are "merchandise" as this term is defined in A.R.S. §44-1521(5).

74. Plaintiff suffered an injury resulting from the false misrepresentation(s) and was damaged thereby in an amount of no less than $35,000.00.

75. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

76. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts but in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of that Defendant failed to disclose information; and

    B. For damages in the amount requested; and

    C. For punitive damages in the amount requested; and

    D. For such other and further relief as the Court may deem just and proper.

## COUNT SIX
Consumer Fraud - Brand Deceit

77. Plaintiff realleges all allegations heretofore set forth.

78. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the purchase and use of nationally recognizable brand names

such as "Holiday Inn", "Hilton", "Motel 6", "Marriott" in order to hide the true ownership and operational management of the hotel or motel.

79. One way this deceptive self-identification is communicated to the guests and potential guests is through actual identification on the property itself. For example, Defendant Phoenix North Bell identifies itself as Motel 6 at the entrance to the Hotel:



80. Phoenix North Bell is not Motel 6. It is Phoenix North Bell. The misidentification is necessary because general public, including Plaintiff, identify Motel 6 with a higher degree of lodging standard and general integrity than Phoenix North Bell.

81. Another way Defendant misidentifies itself is thorough its booking website:

1

2  82. Yet other ways Phoenix North Bell misidentifies itself as a Motel 6 is with the

3      key jacked sporting Motel 6 logo, the key itself with a Motel 6 logo and

4      personnel uniforms with Motel 6 logos:

5

 

20  83. The intent and purpose of this deceptive self-identification is to mislead the lodging

21      public into believing that they are booking a hotel  room at a national brand name

22      property when they are in fact booking a room with an unknown owner and an

23      unknown operator. Plaintiff justifiably relied on Phoenix North Bell's false self-

24      identification to his damage.

25  84. Plaintiff suffered an injury resulting from the false misrepresentation(s) and was

26      damaged thereby in an amount of no less than $35,000.00.

27

28

85. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

86. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts but in no event less than $135,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

 A. For finding of that Defendant failed to disclose information; and

 B. For damages in the amount requested; and

 C. For punitive damages in the amount requested; and

 D. For such other and further relief as the Court may deem just and proper.

### COUNT SEVEN
Civil Conspiracy

87. Plaintiff realleges all allegations heretofore set forth.

88. Motel 6 is the owner of the "Motel 6" brand name.

89. Motel 6 and Phoenix North Bell knew, at all times relevant hereto, that the Motel 6 brand has positive reputation, while Phoenix North Bell has no reputation.

90. Public's perception of Phoenix North Bell is wholly derivative of the reputation of Motel 6.

91. Motel 6 and Phoenix North Bell also knew, at all relevant times, that Phoenix North Bell would sell more rooms if it sold the rooms under the name Motel 6 and not Phoenix North Bell.

92. Phoenix North Bell paid Motel 6 for the use of its brand name Motel 6.

93. Motel 6 and Phoenix North Bell structured their relationship so that Plaintiff and the public would believe that Motel 6 operates the Hotel, while at the same time they knew that Motel 6 was not the operator and would not be considered an operator of the Hotel and thereby not subject to ADA liability.

94. Motel 6 and Phoenix North Bell also knew that the use of Motel 6's brand name would mislead the traveling public into believing that they were dealing with a reputable

1    national lodging chain when in fact they are dealing with an unknown person or entity

2    with no reputation.

3    95. It was for these reasons that Motel 6 and Phoenix North Bell agreed that the Hotel

4    would market its rooms under the name of Motel 6.

5    96. The agreement between Defendants assured that Motel 6 would (1) receive

6    compensation for its part of the brand deceit and (2) avoid ADA liability.  Phoenix

7    North Bell would reap the benefits of greater sales caused by Defendants' brand

8    deceit.

9    97. Defendants agreed to falsely market the Hotel as a "Motel 6" in order to misled the

     public, including Plaintiff,

10   98. Plaintiff believed he was dealing with Motel 6 when in fact he was dealing with an

11   unknown entity.

12   99. Defendants Motel 6 and Phoenix North Bell agreed to accomplish an unlawful

13   purpose,  the sale of rooms under deceptive brand, and did so by unlawful means.

14   100.   Plaintiff suffered an injury resulting from Defendants' brand deceit and their

15   agreement to accomplish it in a manner described above and was damaged

16   thereby in an amount of no less than $35,000.00.

17   101.   Defendants either intended to cause injury to Plaintiff or defendant

18   consciously pursued a course of conduct knowing that it created a substantial

19   risk of significant harm to Plaintiff.

20   102.   Defendants are liable to Plaintiff for punitive damages in an amount to be

21   proven at trial sufficient, however, to deter these Defendants and others

22   similarly situated from pursuing similar acts but in no event less than

23   $235,000.00.

24   **WHEREFORE,** Plaintiff prays for relief as follows:

25       A. For finding of that Defendants committed a civil conspiracy; and

26       B. For damage as prayed for above; and

27       C. For damages in the amount requested; and

28       D. For punitive damages in the amount requested; and

34

E.  For such other and further relief as the Court may deem just and proper.

**COUNT EIGHT**
Civil Aiding and Abetting

103.  Plaintiff realleges all allegations heretofore made.

104.  Defendant Motel 6 aided and abetted Defendant Phoenix North Bell's brand fraud by:

a.  Providing the Motel 6 signage on the physical Hotel building; and

b.  Maintaining a booking website that does not disclose the true ownership and operator of the Hotel; and

c.  Issuing reservation confirmations in the name of Motel 6 in order to conceal the true ownership and operations; and

d.   Otherwise assuring that the true name of the owner of the Hotel appears nowhere on its disclosures, websites, booking websites, telephonic identification, physical signage or anywhere else.

105.  Plaintiff suffered an injury resulting from Motel 6's aiding and abetting brand deceit in an amount of no less than $35,000.00.

106.  Defendants either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

107.  Defendants are liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter these Defendants and others similarly situated from pursuing similar acts but in no event less than $235,000.00.

108.   With respect to all counts, Plaintiff alleges that Defendant has been subject to a previous ADA action but has not remediated wither its booking website or the architectural conditions of its Hotel. Plaintiff further alleges that:

a.  Defendants' conduct was and continues to be representable; and

35

b. Defendant's caused severe of the harm, i.e. segregation of persons with disabilities; and

c. Defendants segregated of Plaintiff from the rest of the traveling public; and

d. The duration of Defendants' the misconduct is over 30 years and

e. Defendants' were fully aware of their own illicit maintenance of hotels; and

f. Particularly where compensatory damages may be low, "the need for punishment or deterrence may be increased by reason of the very fact that the defendant will have no liability for compensatory damages". *Sanchez v. Clayton*, 117 N.M. 761, 767, 877 P.2d 567, 573 (1994) (citing to 1 Dan B. Dobbs, *Law of Remedies* § 3.11(10), at 515-16 (2d ed. 1993))).

109. These factors recommend that only the most severe sanctions against Defendant Hotel will assure compliance with the ADA and integration of disabled individuals.

## REQUEST FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

RESPECTFULLY SUBMITTED this 22nd day of September, 2020.

**PETER STROJNIK**

Peter Strojnik
Plaintiff

# EXHIBIT "3"

Peter Strojnik
Pro Per
7847 N. Central Ave.
Phoenix, AZ 85020
(602) 524-6602

CLERK OF THE
SUPERIOR COURT
FILED
V. MARTINEZ, DEP

2020 SEP 29  PM 12: 29

ORIGINAL

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA**

**PETER STROJNIK,**

Plaintiff,

Case Number: CV2020-055199

vs.

**DECLARATION OF SERVICE BY A
PRIVATE PROCESS SERVER**

**PHOENIX NORTH BELL M6, LLC, et al,**

Defendant.

Received by Rush Hour Legal Service to be served on **G6 HOSPITALITY, LLC**.

I, Russell D. Hoffman, do hereby affirm that on the **28th day of September, 2020** at **1:25 pm**, I:

served **G6 HOSPITALITY, LLC** by delivering a true copy of the **Summons; Certificate of Compulsory Arbitration; Complaint** with the date and hour of service endorsed thereon by me, to: **CORPORATION SERVICE COMPANY Brooklyn Vandeventer (Agent) (Statutory Agent)** at the address of: **8825 N. 23rd Ave. Suite 100, Phoenix, AZ 85021**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 24, Sex: F, Race/Skin Color: White, Height: 5'3", Weight: -, Hair: Blonde, Glasses: N

I, being fully qualified under ARCP 4(e) to serve process within the State of Arizona and having been so appointed by Maricopa County Superior Court, Declare under penalty of perjury that the foregoing is true and correct and was executed on the above date.

Russell D. Hoffman
Process Server MC-7486

**Rush Hour Legal Service**
P.O. Box 30997
Mesa, AZ 85275
**(480) 797-9483**

Our Job Serial Number: RUL-2020001841
Service Fee: $75.00

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1g



# EXHIBIT "4"



Peter Strojnik
Pro Per
7847 N. Central Ave.
Phoenix, AZ 85020
(602) 524-6602

**ORIGINAL**

CLERK OF THE
SUPERIOR COURT
FILED
M. MESSMER, DEP

**2020 SEP 30   AM 8: 51**

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

**PETER STROJNIK,**

Plaintiff,

vs.

**PHOENIX NORTH BELL M6, LLC, et al,**

Defendant.

Case Number: CV2020-055199

**DECLARATION OF SERVICE BY A
PRIVATE PROCESS SERVER**

Received by Rush Hour Legal Service to be served on **PHOENIX NORTH BELL M6, LLC**.

I, Christina Donaldson, do hereby affirm that on the **29th day of September, 2020 at 2:45 pm, I:**

served **PHOENIX NORTH BELL M6, LLC** by delivering a true copy of the **Summons; Certificate of Compulsory Arbitration; Complaint** with the date and hour of service endorsed thereon by me, to: **GERALD DE LA' O (General Manager Authorized by the Statutory Agent)** at the address of: **2330 W. Bell Rd., Phoenix, AZ 85023**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
I spoke to Gerald De La O the general manager and he called Sunesh Tewari (Stat agent). He authorized Gerald to accept service.

**Description** of Person Served: Age: 50s, Sex: M, Race/Skin Color: Hispanic, Height: 5'8", Weight: 170, Hair: Black, Glasses: N

I, being fully qualified under ARCP 4(e) to serve process within the State of Arizona and having been so appointed by Maricopa County Superior Court, Declare under penalty of perjury that the foregoing is true and correct and was executed on the above date.

**Christina Donaldson**
MC 8800

**Rush Hour Legal Service**
P.O. Box 30997
**Mesa, AZ 85275**
**(480) 797-9483**

Our Job Serial Number: RUL-2020001842
Service Fee: $75.00

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1g



# EXHIBIT "5"

Person Filing: PETER STROJNIK
Address (if not protected): 7847 N. CENTRAL AVE
City, State, Zip Code: PHOENIX, ARIZONA 85020
Telephone: 602-524-6602
Email Address: PS@strojnik.com
Lawyer's Bar Number:

Representing ☒ Self, without a Lawyer  or  ☐ Attorney for  ☐ Plaintiff  OR  ☐ Defendant

For Clerk's Use Only

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

PETER STROJNIK

Name of Plaintiff

And

Phoenix North Bell M6, LLC and G6 Hospitality LLC

Name of Defendant

Case No.: CV2020-055199

SUMMONS

If you would like legal advice from a lawyer,
contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

---

**WARNING: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help.**

---

FROM THE STATE OF ARIZONA TO: Phoenix North Bell M6, LLC and G6 Hospitality, LLC

Name of Defendant

1. **A lawsuit has been filed against you.  A copy of the lawsuit and other court papers are served on you with this *"Summons"*.**

2. **If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the:**

   - **Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 OR**

   - **Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix, Arizona 85032 OR**

   - **Office of the Clerk of Superior Court,  222 East Javelina Avenue, Mesa, Arizona  85210-6201 OR**

   - **Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise, Arizona, 85374.**

   **Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.**

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV11f  010119

Case Number: _____

3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4. You can get a copy of the court papers filed in this case from the Petitioner at the address listed at the top of the preceding page, from the Clerk of the Superior Court's Customer Service Center at:

   - **601 West Jackson, Phoenix, Arizona 85003**
   - **18380 North 40ᵗʰ Street, Phoenix, Arizona 85032**
   - **222 East Javelina Avenue, Mesa, Arizona 85210**
   - **14264 West Tierra Buena Lane, Surprise, Arizona 85374.**

5. Requests for reasonable accommodation for persons with disabilities must be made to the division assigned to the case by the party needing accommodation or his/her counsel at least three (3) judicial days in advance of a scheduled proceeding.

6. Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

**SIGNED AND SEALED this date**

_____

COPY

**CLERK OF SUPERIOR COURT**
SEP 2 9 2020

CLERK OF THE SUPERIOR COURT
M. MESSMER
DEPUTY CLERK

By_____
            **Deputy Clerk**

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Page 2 of 2

CV11f 010119

# EXHIBIT "D"

1
2
3
4
5

Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
Jordan T. Leavitt – 031930
jleavitt@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

6   *Attorneys for Defendants*

7

8   **IN THE UNITED STATES DISTRICT COURT**

9   **FOR THE DISTRICT OF ARIZONA**

10   Peter Strojnik,                              No.

11              Plaintiff,

12   vs.                                          **VERIFICATION OF STATE COURT RECORD**

13   Phoenix North Bell M6, LLC and G6
     Hospitality, LLC.,
14

15              Defendants..

16   State of Arizona          )
                               )  ss
17   County of Maricopa        )

18   **VERIFICATION OF LINDSAY G. LEAVITT**

19        1.    Lindsay G. Leavitt, having been duly sworn upon my oath, declare and

20   state, under penalty of perjury, as follows:

21        2.    I am a Partner at the law firm of Jennings, Strouss & Salmon, PLC, and

22   represent the Defendants.

23        3.    On September 23, 2020, Plaintiff Peter Strojnik filed the above-

24   captioned case in the Maricopa County Superior Court of the State of Arizona, Case

25   No. CV2020-055199 ("State Court Action").

26        4.    True and correct copies of all pleadings and other documents filed in

27   the State Court Action are attached to the Notice of Removal as Exhibit C [1-5].

28

7334809v1(69759.1)

5.     A true and correct copy of the Notice of Removal has been sent to the clerk of the court in the State Court Action, and written notice has been sent to the Plaintiff, at the same time that the Notice of Removal is being filed in this Court.

I verify under penalty of perjury that the foregoing is true and correct.

DATED this 26 day of October, 2020.

_____
Lindsay G. Leavitt

**SUBSCRIBED and SWORN to before me this _ day of October, 2020.**

_____
Notary Public

My Commission Expires:

_____

BONNIE M. SIMPSON
Notary Public - Arizona
MARICOPA COUNTY
Commission # 588381
Expires Sept. 16, 2024

2

# EXHIBIT "E"

1
2
3
4
5
6

Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
Jordan T. Leavitt – 031930
jleavitt@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554
Telephone: (602) 262-5911
MinuteEntries@jsslaw.com

*Attorneys for Defendants*

7
8
9

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

10
11
12
13
14
15

| | |
|---|---|
| PETER STROJNIK, | No. CV2020-055199 |
| Plaintiff, | |
| vs. | **DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT** |
| PHOENIX NORTH BELL M6, LLC.and G6 HOSPITALITY, LLC, | |
| Defendant. | |

16
17

**TO:  CLERK OF THE SUPERIOR COURT AND ALL PARTIES TO THIS ACTION**

18
19
20
21

Please take notice that on September 23, 2020, Defendant Phoenix North Bell M6, LLC and G6 Hospitality, LLC, filed in the United States District Court for the District of Arizona a Notice of Removal to remove this action to that court.  A full and true copy of said Notice of Removal is herewith served on you for filing attached as **Exhibit "A"**.

22

RESPECTFULLY SUBMITTED this 26th day of October, 2020.

23

JENNINGS, STROUSS & SALMON, P.L.C.

24
25
26
27

By */s/ Lindsay G. Leavitt*
Lindsay G. Leavitt
Jordan T. Leavitt
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554
*Attorneys for Defendants*

28

. . .

7334817v1(69759.1)

Original of the foregoing E-Filed with the
Clerk of the Court and a Copy of the
foregoing Emailed on this 26th day of
October, 2020, to:

Peter Strojnik
7847 N. Central Avenue
Phoenix, AZ 85020
ps@strojnik.com
*Pro Per*

*/s/  Tana Davis-Digeno*

2

7334817v1(69759.1)